UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

K.G. MOTORS, INC., doing business as
NOTUBES,
                   <u>DECISION & ORDER</u>
      Plaintiff,
                   08-CV-6422T
    v.

SPECIALIZED BICYCLE COMPONENTS, INC.,

      Defendant.
_____


    Plaintiff K.G. Motors, Inc., doing business as NoTubes ("NoTubes"), commenced this action on September 15, 2008, alleging that Specialized Bicycle Components, Inc. ("Specialized") has infringed its patent for a tubeless bicycle wheel rim, United States Patent No. 7,334,846 ("the '846 patent"). (Docket # 1). Specialized filed a counterclaim seeking a declaration that the '846 patent is invalid. (Docket # 6).

    On November 26, 2008, Specialized filed a request for an *inter partes* reexamination with the United States Patent and Trademark Office ("PTO"). (Docket # 15-3 at ¶ 3; Docket # 15-4). The PTO determined that Specialized raised a substantial new question of patentability based upon prior art presented in a new light. (Docket # 30). The PTO thus granted Specialized's request for reexamination and preliminarily rejected all of NoTubes' patent claims. (Docket # 30).

    On December 1, 2008, Specialized moved to stay this litigation pending the PTO's reexamination of the '846 patent. (Docket # 15). The following day, this Court held a scheduling conference and issued a scheduling order shortly thereafter. (Docket ## 18, 20).

Since that time, document discovery has proceeded, but no other discovery has been undertaken pending resolution of the instant motion.

This Court conducted oral argument on Specialized's motion for a stay on February 3, 2009. (Docket # 18). At that time, the Court reserved decision, and the following constitutes the Decision and Order on that motion.

## **DISCUSSION**

Specialized contends that a stay of this litigation is appropriate in light of the PTO's decision to reexamine the '846 patent. (Docket # 30). Specialized argues that the reexamination could – and, based upon relevant statistics of the PTO, likely would – result in a narrowing or rejection of NoTubes' patent claims.[1] Such an outcome, Specialized posits, would offer the twin benefits of simplifying the issues before the Court and reducing the parties' litigation costs. (Docket ## 15, 22).

NoTubes counters that the delay attendant to the reexamination process would unduly prejudice its small business. (Docket # 21 at 6).[2] Specifically, NoTubes contends that if a stay were granted, Specialized, by virtue of its comparatively larger size and more substantial resources, would continue to infringe upon NoTubes' patent and thus unfairly gain a larger share of the market and threaten NoTubes' viability. (Docket # 21 at 5).

---

[1] The PTO's published statistics reveal that from 1999 to 2008, reexaminations led to the modification or cancellation of 88% of the challenged claims. (Docket # 15-5 at 2).

[2] The parties cite published statistics that the reexamination process generally ranges from thirty-two to seventy-eight months to complete. (Docket # 21 at 6; # 15-5 at 2).

2

At oral argument, counsel for Specialized represented that it had redesigned its wheel rims in a manner that no longer implicates the '846 patent and had ceased manufacturing and producing the accused wheel rims.[3] Specialized further represented that the remaining inventory of the accused wheel rims would be sold only through 2009.

A. **Applicable Legal Principles**

The procedure for patent reexamination is set forth by statute in Title 35 of the United States Code. In pertinent part, the statute provides:

> Any third-party requester at any time may file a request for inter partes reexamination by the [PTO] of a patent on the basis of any prior art cited under the provisions of section 301. The request shall be in writing, include the identity of the real party in interest . . . and set forth the pertinency and manner of applying cited prior art to every claim for which reexamination is requested. The Director promptly shall send a copy of the request to the owner of record of the patent.

35 U.S.C. § 311. "One purpose of the reexamination procedure is to eliminate trial of the issue of patent claim validity (when the claim is canceled by the [PTO]), or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Synder Seed Corp. v. Scrypton Sys., Inc.*, 1999 WL 605701, *2 (W.D.N.Y. 1999) (citing *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir.), *cert. denied*, 464 U.S. 935 (1983); *Ingro v. Tyco Indus., Inc.*, 1985 WL 1649, *1 (N.D. Ill. 1985)). "The procedure was intended 'to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts ...,' especially where the infringement litigation is in the early stages." *Id.* (citing *Digital Magnetic Sys., Inc. v. Ansley*,

---

[3] At the time of oral argument, NoTubes had not examined Specialized's newly-redesigned wheel rims. This Court has received no further correspondence from either party on the issue.

1982 WL 52160, *1 (W.D. Okla. 1982)). Resort to the reexamination procedure should not be sanctioned through the issuance of a stay, however, where it is pursued for tactical advantage after substantial and costly discovery has been conducted or where trial is imminent.

Although the commencement of reexamination proceedings does not operate as an automatic stay of federal court litigation involving identical claims, a district court retains the authority, pursuant to its inherent power to control and manage its docket, to stay an action pending the outcome of reexamination proceedings before the PTO. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988); *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999) (citing *Gould v. Control Laser Corp.*, 705 F.2d at 1340), *appeal dismissed by*, 243 F.3d 554 (Fed. Cir. 2000). "A motion to stay an action pending the resolution of a related matter in the [PTO] is directed to the sound discretion of the court." *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d at 406 (quoting *Braintree Labs., Inc. v. Nephro-Tech., Inc.*, 1997 WL 94237 (D. Kan. 1997)). Neither party in this matter disputes the Court's authority to order a stay; rather, they dispute the merits of exercising that authority in this case.

As various judges have observed, courts "routinely" issue stays pending the outcome of reexamination proceedings, particularly in cases where the litigants have not made substantial progress towards trial. *Middleton, Inc. v. Minnesota Mining and Mfg. Co.*, 2004 WL 1968669, *3 (S.D. Iowa 2004); *Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 WL 1134471, *2 (S.D.N.Y. 2000) (collecting cases). *See also Card Tech. Corp. v. DataCard Corp.*, 2007 WL 551615, *4 (D. Minn. 2007) ("a stay is usually warranted unless other factors outweigh the potential benefits of awaiting the outcome of reexamination"); *Bausch & Lomb Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951, 953 (W.D.N.Y. 1996) (noting that "[b]ecause[] the PTO is

considered to have expertise in deciding issues of patentability[,] many courts have preferred to postpone making final decisions on infringement until the PTO rules on issues before it"). Deferring determinations of patent validity to the PTO offers many advantages, including the following:

> 1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
>
> 2. Many discovery problems relating to prior art can be alleviated by the PTO examination.
>
> 3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
>
> 4. The outcome of the reexamination may encourage a settlement without further use of the court.
>
> 5. The record of the reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
>
> 6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences afer a reexamination.
>
> 7. The cost will likely be reduced both for the parties and the Court.

*Snyder Seed Corp. v. Scrypton Sys., Inc.*, 1999 WL 605701 at *3 (quoting *Emhart Indus. Inc. v. Sankyo Seiki Mfg. Co.*, 1987 WL 6314, *2 (N.D. Ill. 1987)). *Accord Card Tech. Corp. v. DataCard Corp.*, 2007 WL 551615 at *3; *EchoStar Tech. Corp. v. TiVo, Inc.*, 2006 WL 2501494, *2 (E.D. Tex. 2006); *Pegasus Dev. Corp. v. Directv, Inc.*, 2003 WL 21105073, *2 (D. Del. 2003); *Perricone v. Unimed Nutritional Servs., Inc.*, 2002 WL 31075868, *1-2 (D. Conn. 2002); *Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 WL 1134471 at *2.

Three factors generally deserve consideration in determining whether to stay a litigation pending reexamination by the PTO: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *Softview Computer Prods. Corp.*, 2000 WL 1134471 at *2; *Xerox Corp.*, 69 F. Supp. 2d at 406 (citing *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, 1995 WL 20470 (N.D. Cal. 1995); *GPAC, Inc. v. D.W.W. Enter., Inc.*, 144 F.R.D. 60, 66 (D.N.J. 1992); *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991)). As discussed below, I find that consideration of these factors weighs in favor of granting a stay.

### B. Analysis

NoTubes' argument that a stay would result in undue prejudice to its business is too speculative to credit on the record before the Court. NoTubes maintains that because Specialized is a larger company, continued infringement by Specialized will threaten NoTubes' ability to remain in business. This contention – advanced exclusively in NoTubes' memorandum of law – is unsupported by any specific factual allegations in the record, including affidavits or business records. The only factual allegation relevant to this argument that is contained in the record is the assertion that NoTubes currently has ten employees. (Docket # 21-2 at ¶ 2). No information has been presented concerning the size of Specialized, its resources or revenues, its share of the tubeless market or the effect that the sales of the alleged infringing products has had on NoTubes' business. In the absence of more particularized factual allegations, I find that NoTubes' claim of undue prejudice is too conclusory to justify denying the requested stay. *Cf. Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C. LLC*, 464 F. Supp. 2d 481, 485

(D. Md. 2006) (denying plaintiff's application for a stay pending patent reexamination because of the uncertainty the defendant would face in determining whether to continue its operations and face potential increased liability).

Moreover, Specialized represents that it has ceased manufacturing and producing the accused wheel rims and will cease selling them after the end of this year, 2009. NoTubes has not petitioned the Court for preliminary injunctive relief barring Specialized from selling the accused wheel rims during the pendency of this action. In the absence of such relief, Specialized is free to continue to sell its allegedly infringing products subject to liability for damages in the event that NoTubes prevails in this litigation. Thus, even if a stay were denied, this litigation would continue well after the end of this year. Under these circumstances – where the alleged infringer represents that it has ceased manufacturing the challenged product and will cease sales of the product before the litigation would conclude – I find that the first factor weighs in favor of a stay. *See Bausch & Lomb Inc. v. Rexall Sundown, Inc.*, 554 F. Supp. 2d 386, 391 (W.D.N.Y. 2008) (citing *Xerox Corp.*, 69 F. Supp. 2d 404, 407 (W.D.N.Y. 1999) (conditioning stay upon defendant's agreement to refrain from producing and selling the allegedly infringing product).

Nor do I find that the disadvantages of the delay that invariably will be occasioned by the requested stay outweigh the advantages to this litigation that will result from the PTO's ultimate determination. *See Synder Seed Corp.*, 1999 WL 605701 at *4 ("the benefits of a stay pending determination of defendant's requests for reexamination . . . outweigh any detriments to the parties cause by delay of court proceedings"). *See also Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 2007 WL 2990152, *1 (N.D. Cal. 2007) ("an inter partes reexamination can have no other effect but to streamline ongoing litigation" because such proceedings "impose estoppel

7

restraints upon third-party requesters" under 35 U.S.C. § 315(c)[4]) (internal quotation omitted), *vacated on other grounds*, 549 F.3d 842 (Fed. Cir. 2008). Should the PTO determine that all or some of the patent claims at issue are invalid, that determination will conserve the resources of this Court and the litigants and simplify the issues before the Court. Conversely, should the PTO reaffirm the patent claims, the Court will benefit from its expert analysis of those claims and the prior art. *See*, *e.g.*, *Softview Computer Prods. Corp.*, 2000 WL 1134471 at *3; *Snyder Seed Corp.*, 1999 WL 605701 at *2.

The third factor – whether discovery is complete and whether a trial date has been set – plainly weighs in favor of the issuance of a stay. While document discovery has been undertaken, no other fact discovery has occurred. No *Markman* hearing has been scheduled, let alone conducted, and, of course, no trial date has been set. The early posture of this litigation thus supports the requested stay.

Finally, I reject NoTubes' position that a stay should not be granted because Specialized based its reexamination request on prior art previously rejected by the PTO. The PTO has since granted the requested reexamination and has preliminary rejected all of the '846 patent claims on the basis of the cited prior art. On this record, I find that staying the litigation until the PTO reexamines those claims will be beneficial to both the litigants and the Court.

---

[4] 35 U.S.C. § 315(c) provides:

> A third-party requester whose request for an inter partes reexamination results in an order under section 313 is estopped from asserting at a later time, in any civil action arising in whole or in part under section 1338 of title 28, the invalidity of any claim finally determined to be valid and patentable on any ground which the third-party requester raised or could have raised during the inter partes reexamination proceedings.

For the reasons stated above, I conclude that a stay of this matter should be granted pending a final resolution of the PTO's reexamination. The stay is conditioned upon Specialized's agreement to discontinue manufacturing and producing the accused wheel rims during the pendency of the reexamination proceedings before the PTO and to refrain from selling any remaining inventory of the accused product after December 31, 2009.

## CONCLUSION

Consistent with Specialized's representation at oral argument that it no longer manufactures or produces the accused product and will not sell the accused product after 2009, it is the Decision and Order of this Court that Specialized's motion to stay **(Docket # 15)** is **GRANTED**, and this case is stayed until further order of the Court. In the event that Specialized intends to resume manufacturing or producing the accused product or selling it after December 31, 2009, Specialized shall so advise NoTubes of such intention no later than four (4) weeks prior to such manufacture, production or sale in order to permit NoTubes to apply to this Court for an order lifting the stay.

Counsel for the parties are directed to contact this Court in writing within seven (7) days of a decision by the PTO on the pending reexamination proceeding to request a status conference.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　*s/Marian W. Payson*
　　　　　　　　　　　　　　　　　　　　　　　　　MARIAN W. PAYSON
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

Dated: Rochester, New York
　　　　July  22 , 2009